## PENSION BENEFIT GUARANTY CORPORATION, Plaintiff,

v.

## HATHAWAY MACHINERY COMPANY, INC., Defendant.

### Civ. A. No. 82–0008–MA.

United States District Court,
D. Massachusetts.

June 28, 1983.

Henry Rose, Gen. Counsel, Baruch A. Fellner, Associate Counsel, Lawrence F. Landgraff, Trial Atty., Peter H. Gould, Atty., Pension Ben. Guar. Corp., Washington, D.C., for plaintiff.

William H. Fricke, Lantz & Fricke, P.C., New Bedford, Mass., for defendant.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

The Pension Benefit Guaranty Corporation (PBGC) brings this action to enforce a final determination assessing liability against the defendant, Hathaway Machinery Company, Inc. (Hathaway). This action arises under Title IV of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1301 *et seq.* Jurisdiction is founded upon 29 U.S.C. § 1303(e)(3). Presently before the Court is the plaintiff's unopposed motion for summary judgment. A review of the voluminous administrative record and further submissions reflect the following undisputed facts.

The PBGC is a wholly-owned corporation of the United States government created to ensure the payment of benefits provided under a pension plan which has terminated. 29 U.S.C. § 1302(a)(2). Congress has conferred upon this corporation, pursuant to 29 U.S.C. § 1302(b)(1) and (b)(8), the authority to contract, execute instruments, incur liabilities and bring suit in order to fulfill the purposes of ERISA under Title IV. Hathaway is a Massachusetts corporation with headquarters in Fairhaven, Massachusetts.

On June 10, 1980, the PBGC entered into a pension plan termination insurance contract with Hathaway, whereby the PBGC became the trustee of the "Pension Plan for Employees of Hathaway Machinery Company, Inc." (the Plan). This trustee agreement established that the Plan was covered by Title IV of ERISA and that the effective date of the Plan's termination was August 7, 1975.[1] Originally, Hathaway had con-

---

1. Hathaway terminated its pension plan after about 80 percent of its workforce (approximately forty employees) unionized and joined, in the fall of 1974, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, Local # 59. As a result, these

tracted with the Travelers Insurance Company (Travelers) to provide a pension annuity plan for its employees. On May 1, 1967, the Plan came into being. During the Plan's existence, Hathaway made two amendments to the instrument itself, one of which is discussed below.

On August 18, 1980, the PBGC notified Hathaway that it was liable to the insurer for $62,545.00. This assessment was made in compliance with the standards laid out in 29 U.S.C. § 1362(b)(1)(A) and (B).[2] The PBGC determined that this figure represented, as of the date of Plan termination, the value of the Plan's guaranteed benefits minus the value of available assets to pay for those benefits. On October 31, 1980, Hathaway appealed this ruling to the PBGC Appeals Board (Board). On June 29, 1981, the Board affirmed the prior determination, but modified the amount of Hathaway's liability. Since this final action by the PBGC, Hathaway has failed to pay off any of its debt to the PBGC, thus giving rise to this action.

The PBGC is a governmental agency as defined under the Administrative Procedure Act, 5 U.S.C. § 701(b)(1). *Pension Benefit Guaranty Corp. v. Ouimet Corp.,* 470 F.Supp. 945, 950 n. 11 (D.Mass.1979), *aff'd,* 630 F.2d 4 (1st Cir.1980), *cert. denied,* 450 U.S. 914, 101 S.Ct. 1356, 67 L.Ed.2d 339 (1981). A final determination of this agency is subject to the narrow scope of review prescribed in 5 U.S.C. § 706(2). *Pension Benefit Guaranty Corp. v. M.M. Mades Co., Inc.,* Civ.Doc. No. 80–940 at 5–6 (D.Mass. June 23, 1980). It is uncertain, however, which parts of the PBGC's final action, if any, the defendant regards as violative of section 706(2), since it has not filed any

opposition to the plaintiff's motion for summary judgment. For the sake of a complete discussion of the matter, this Court addresses those issues raised on the administrative level. *See United States v. Tucker Truck Lines, Inc.,* 344 U.S. 33, 36–37, 73 S.Ct. 67, 68–69, 97 L.Ed. 54 (1952). The "arbitrary and capricious" standard of 5 U.S.C. § 706(2)(A) directly applies to those arguments made before the Board and requires that a reviewing court "consider whether the [agency] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971) (citations omitted).

On appeal, Hathaway made two challenges to the PBGC's lower-level ruling disputing: (1) the valuation of Plan assets credited to Hathaway's account on the date of Plan termination and (2) the valuation of Hathaway's obligations under the Plan's early retirement provision.[3] As to the first issue, Hathaway maintained that the PBGC failed to include as Plan assets the sum of $9,228.00, which Travelers had deducted on October 1, 1975, in order to cover benefit payments to thirteen particular retirees. The defendant urged that this sum be added to the tabulation of assets with a corresponding decrease in the company's liability to the PBGC. The Board essentially agreed with Hathaway, but found that, of the total $9,228.00, an amount of $1,647.00 had been allotted for pre-termination benefit payments. The remainder had gone to post-termination entitlements. Since the Board was concerned only with assets covering

---

unionized workers became members of the New England Teamsters and Trucking Pension Fund, whose coverage was superior to that of Hathaway.

2. Hathaway has admitted that thirty percent of its net worth, measured in accordance with 29 U.S.C. § 1362(b)(2), was sufficient to cover the full amount of its liability to the PBGC. Administrative Record at 279. Thus, the PBGC's calculations of employer liability focused exclusively on the formula prescribed in 29 U.S.C. § 1362(b)(1)(A) and (B).

3. Hathaway raised a third issue on appeal, which does not warrant discussion in the body of this Memorandum. This concerned a simple application of 29 U.S.C. § 1362(b) (calculation of employer liability to be made "on the date of [Plan] termination"). *See* Administrative Record at 671–72. Also, request for oral hearing on review was denied. The Board's denial was proper because there was no dispute as to any material facts presented on appeal.

payment of post-termination benefit entitlements, it added the remainder—$7,581.00—to the Plan assets previously quantified. In turn, it proportionately readjusted Hathaway's liability under the Plan. The value of benefits guaranteed thereunder was increased by $5,683.00 to reflect the cost of serving the same thirteen retirees during their term as beneficiaries post-termination. The upward modifications in Plan assets and liabilities culminated in a net decrease in Hathaway's total debt to the PBGC. The Board reduced the amount owed from $62,545.00 to $60,647.00.

Next, Hathaway contended that the PBGC incorrectly had tabulated the amount of its obligations attributable to early retirement benefit payments. The defendant argued that the Plan restricted a worker's right to elect early retirement in that the employer's consent was a prerequisite in each instance. Under Article 4.2 of the original Plan, such a consent clause was stated explicitly:

> With the consent of the Company [Hathaway], an Employee who has attained age 55 and completed at least 15 years of Continued Service may elect to retire on an Early Retirement Date. . . .

The above provision effectively rendered any early retirement benefits conditional and, therefore, not guaranteed under Title IV of ERISA until Hathaway gave its consent. Under Plan amendment I, effective May 1, 1971, this contract language was re-written:

> 4.2 Early Retirement
> An Employee who has attained age 55 and completed at least 10 years of Continuous Service may elect to retire on an Early Retirement Date. . . .

The revision eliminated the consent clause and remained in effect through the date of Plan termination. Thus, contrary to Hathaway's reading of the Plan instrument, it was clear that early retirement benefits vested and became guaranteed legally without Hathaway's consent after May 1, 1971. The Board so held.

A thorough review of the record leads to the conclusion that, with regard to each issue raised on administrative appeal, the Board's action fully comported with the standards prescribed in section 706(2). The record shows that the Board, in large part, adopted Hathaway's position concerning the calculation of assets; the offsetting figure representing the corresponding value of post-termination benefits to the thirteen retirees was a natural consequence of admitting a new value to total assets. Moreover, the second appellate issue is summarily disposed of under a plain reading of the amended Plan, Article 4.2. All of the PBGC's final calculations were made in compliance with the appropriate statutory and regulatory standards. It is evident that the PBGC gave consistently meticulous attention to this matter during its pendency and there is no basis to claim disregard of relevant factors or clear error of judgment.

For the foregoing reasons, the plaintiff's motion for summary judgment must be granted.

SO ORDERED.